JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Suite 110
Las Vegas, Nevada 89130
Ph. (702) 258-1183 / Fax (702) 258-6983
jp@kemp-attorneys.com
vneal@kemp-attorneys.com

*Attorneys for Plaintiff Pauline Whelan*

# UNITED STATE DISTRICT COURT

## DISTRICT OF NEVADA

***

| | |
|---|---|
| PAULINE WHELAN, | ) Case No.:  2:17-cv-2114 |
| Plaintiff, | ) **COMPLAINT** |
| v. | ) **JURY TRIAL DEMANDED** |
| ALKERMES, INC., | ) |
| Defendant. | ) |

**COMES NOW** Plaintiff, PAULINE WHELAN, by and through Counsel of Record, the law firm of KEMP & KEMP, ATTORNEYS AT LAW, and for a cause of action does hereby state and allege as follows:

## JURISDICTION AND VENUE

1.  This is a civil action for damages brought by PAULINE WHELAN ("Plaintiff") against her former employer, ALKERMES, INC. ("Defendant") to redress sex/gender discrimination and retaliation under state and federal anti-discrimination and anti-retaliation laws N.R.S. 613.330 *et seq.*, and Title VII of the 1964 Civil Rights Act, as amended by the 1991 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*,

*KEMP & KEMP*
*ATTORNEYS AT LAW*
*7435 W. AZURE DR., SUITE 110*
*LAS VEGAS, NEVADA 89130*
*Tel. (702) 258-1183 ♦ Fax (702) 258-6983*

1

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

2.   The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 in that it arises under the Constitution, laws, or treaties of the United States, specifically 42 U.S.C §§2000e *et seq.* the Civil Rights Act of 1964.

3.   The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over any related state law claims alleged herein.

4.   Venue is proper in the unofficial Southern Division of the Court.

5.   On or about July 15, 2016, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC").

6.   On May 9, 2017, the EEOC issued a Dismissal and Notice of Rights.  **Exhibit 1**.

7.   Plaintiff is filing this suit within the requisite 90 days of receipt of the Dismissal and Notice of Rights.

8.   Plaintiff has fully complied with all prerequisites under Title VII and Nevada state statutes to pursue these claims in this Court.

9.   Plaintiff has timely filed this Complaint.

## PARTIES

10. Plaintiff is a resident of Clark County, Nevada. Plaintiff is female. As such Plaintiff is a member of a protected class.

11. Defendant, ALKERMES INC., is a corporation incorporated under the laws of Pennsylvania, and its principal place of business is Waltham, Massachusetts.

12. Defendant, as a corporation, can only operate by and through its agents, directors, officers, managers, supervisors, and employees. Therefore, wherever the identifying word Defendant is used, it encompasses actions by and through its agents, directors, officers, managers, supervisors, and employees.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**ALLEGATIONS COMMON TO ALL CLAIMS**

13. Plaintiff was hired by Defendant in January 2009 as an Addiction Recovery Associate.

14. In August 2011, Plaintiff was promoted to the position of Associate Director of Government Affairs in Defendant's Government Affairs and Policy Department. Plaintiff reported to Jeffery Harris ("Harris"). Plaintiff was terminated by Harris ("Harris") on or about September 12, 2016.

15. Plaintiff was qualified for her position and did not receive any negative performance evaluations or placed on a Performance Improvement Plan ("PIP") until 2016 after she complained about discriminatory treatment and had been subjected to ongoing retaliation designed to elicit her resignation.  The negative performance evaluation was pre-textual and Defendant subjected Plaintiff to differential treatment by conspiring to create trumped up charges of inadequate job performance when Plaintiff had previously always received the equivalent of an excellent rating.

16. It is well known that placing female employees on a PIP, ending in termination, for alleged inadequate job performance is Defendant's modus operandi. Defendant is so brazen with these actions that in January 2016, at a national company meeting, and before Plaintiff even knew she was going to be placed on a PIP, a sales representative, Yumi Yamamoto, was told that Plaintiff would not be with the company for much longer. Defendant has also placed numerous female employees on PIP's separating them from employment and telling them before the PIP is completed that they will be terminated.

17. In 2013, Robert Belaski ("Belaski"), a senior colleague, began engaging in a course of gender/sex discriminatory conduct towards Plaintiff. This included, but is not limited to, (a) always answering questions asked by similarly situated men about work-related issues, but

refusing to answer questions asked by Plaintiff about work-related issues; (b) constantly cutting Plaintiff off while she was presenting ideas about work-related issues, while not doing the same to similarly situated the men; (c) addressing Plaintiff in a condescending manner in front of clients, lobbyists, consultants and co-workers with demeaning comments made to put Plaintiff "in her place," embarrass, humiliate her and undermine her position while not doing the same to similarly situated men; d) yelling at Plaintiff, but never doing the same to similarly situated men.

18. Belaski's discriminatory treatment of Plaintiff substantially interfered with work related matters that were important to the performance of her job materially affecting the terms and conditions of Plaintiff's employment. Similarly situated men were treated more favorably than Plaintiff.

19. Plaintiff reached out to Belaski to discuss his discriminatory treatment of her and to tell him to stop, that his behavior was unacceptable, unwelcome, and unproductive. Belaski's reaction was to yell and demean Plaintiff even more. During one phone call, Plaintiff informed Belaski if he continued the conversation in such a manner she would end the phone call.

20. Plaintiff reported Belaski's discriminatory treatment of her to Harris on three different occasions. Harris' reaction was to ignore and blame Plaintiff for Belaski's discriminatory treatment of her by telling Plaintiff it sounded like a leadership problem on her part. Belaski's discriminatory treatment towards Plaintiff continued.

21. In 2014, Plaintiff reported Belaski's discriminatory treatment of her to Vice President of Human Resource Madeline Coffin (Coffin"). Plaintiff informed Coffin she had spoken directly to Belaski about his discriminatory treatment of her, Belaski's reaction, and that Belaski's treatment of her had not changed. She additionally informed Coffin that she made three verbal complaints of Belaski's discriminatory treatment of her to Harris who did nothing to remedy the

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

4

discrimination. Coffin ignored Plaintiff's complaints of discrimination and told her to go back to Harris with the problem.  Coffin refusing to conduct any investigation into her complaints of discrimination and to remedy the situation left Plaintiff with recourse or place to turn for help.

22. After Plaintiff reported to Coffin the discriminatory treatment and the steps she had taken to remedy the discrimination, including speaking with Harris, the discrimination did not stop and, instead, Harris now joined in efforts to discriminate, retaliate, embarrass and humiliate Plaintiff with actions that substantially interfered with work-related matters important to the performance of her job and which materially affected the terms and conditions of Plaintiff's employment. This included, but is not limited to, a) excluding Plaintiff from meetings, conventions and functions she would normally attend and which were necessary to the performance of her job and which similarly situation men were not excluded; b) undercutting Plaintiff's attempts and applications for transfers and/or promotions instead favoring and advocating for male employees; c) providing raises and performance bonuses to men who had not reached their goals; d) branding Plaintiff a trouble maker after she informed on a manager of another division that the sales people within his division were violating lobbying ordinances; and, e)  refusing to allow Plaintiff to attend a leadership course. Similarly situated men were treated more favorably than Plaintiff.

23. In approximately May 2015, Belaski left his position with Defendant, but Harris' continued to discriminate and retaliate against Plaintiff.

24. In June 2015, Harris assigned Mark Boeson ("Boeson") to act as Plaintiff's supervisor. Boeson held the same position as Plaintiff, Associate Director of Government Affairs in Defendant's Government Affairs and Policy Department. Boeson covered at least the following states: Utah, Colorado, Wyoming. Plaintiff covered California, Arizona and Nevada. Boeson had

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

only been with Defendant since late 2014 and was more interested in facilitating his own personal business outside the company than working with Plaintiff.

25. In October 2015, Harris directed Plaintiff to focus on a legislative approach in California with Defendant's drug Vivitrol, a drug to relief opioid dependency, that has also been found to be an effective pharmaceutical measure to eliminate the craving for those addicted to alcohol. This makes Vivitrol a useful tool that could be used by the courts addressing defendants charged with driving under the influence (DUI). In California, oversight for this type of program falls to the Driving Under the Influence (DUI) Advisory Group which discusses emerging issues and provides information regarding regulatory and policy issues associated with the statewide DUI program. In accordance with Title 9, California Code of Regulations, the Department is required to work with representatives of the county alcohol and drug program administrators, DUI programs, the judiciary, the Department of Motor Vehicles, and other interested parties to maintain quality assurance in the DUI program and to develop ongoing measures of effectiveness.

26. Plaintiff had successfully implemented Defendant's Vivitrol protocol worth millions of dollars in Los Angeles County, San Mateo County, and with California Department of Corrections and Rehabilitation. Plaintiff had also been informed by the California consultants and lobbyist hired by Defendants that a legislative approach was not needed to accomplish Defendant's goals and would ultimately result in a waste of resources. Harris had been informed of the same information.

27. Harris was adamant about the legislative approach and Plaintiff complied, but in order for Plaintiff to move forward it was necessary for Defendant to enter into a new consulting and lobbying contract as the current contract was limited in scope. Plaintiff contacted Harris and sent

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

him the contract to be approved and signed. Harris refused to approve and sign the contract for over a month.  Harris finally sent the contract to Boesen who took three months to approve and sign the contract so Plaintiff could move forward with the legislative approach.

28. Although Harris and Boeson interfered with Plaintiff's ability to do her job, she was able to expedite a California legislative initiative which included finding a sponsor for the initiative. Even with Plaintiff fulfilling the directive given by Harris, Harris was upset. The source of Harris' displeasure was that the sponsor of that legislation was a republican and not a democrat.

29. In addition to the legislative approach, Plaintiff continued with known successful measures to achieve Defendant's objectives regarding Vivitrol including legislative outreach presentations made to the California DUI Advisory Group.

30. Late October 2015, Plaintiff meet with Harris and Boesen in a Dallas hotel conference room where they told Plaintiff she was failing, that she was not an effective communicator and that she needed to learn the legislative process. Plaintiff had already done so taking classes in Sacramento specifically designed to address the California legislative process.  Boesen told Plaintiff he would teach her the legislative process. Assistance from Boesen never materialized.

31. During the October meeting, Plaintiff asked Harris and Boesen to let her attend the LEAD Program which was a program the Defendant's Human Resource department invested in for women in order to develop female leaders.  Harris and Boesen said they knew nothing about the program. Plaintiff contacted the program telling them generally of the issues and improvements which Harris and Boesen wanted Plaintiff to address. A LEAD program administrator informed Plaintiff they could certainly assist in addressing those issues. Plaintiff reported this to Harris and Boesen.  When Plaintiff asked again about attending the program, Boesen stated that he and Harris agreed that Plaintiff did not need to go to the LEAD program

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

because she "had the woman thing down."  Plaintiff voiced her objections to Harris and Boesen's discriminatory comments.

32. On January 28, 2016, Plaintiff met with Harris and Boesen at a national company meeting and was told she would be getting a review that she was not going to like. The meeting was held in an area where colleagues could hear and observe what was transpiring. Repeatedly Harris and Boesen told Plaintiff she did not have the "emotional intelligence" for the job, criticized her work product and berated her accomplishments.  Plaintiff was visibly upset and told the men she felt threatened and objected to their characterization that she did not have the "emotional intelligence" for the job, but they continued their harangue manner towards her in a public place. The choice of venue by the men was a calculated decision to cause embarrassment and humiliation to Plaintiff.   Plaintiff voiced her objections to Harris and Boesen's discriminatory comments. This is the same national company meeting that Yumi Yamamoto, was told by her managers that Plaintiff would not be with the company for much longer. *Supra* at ¶ 16.

33. On February 25, 2016, Plaintiff was given her review by Harris and Human Resource personnel Besty Culunio ("Colunio") and, at the same time, was placed on a PIP. The PIP was given despite the fact that Plaintiff had met and exceeded her 2015 goals which had been approved by Harris.

34. The review had been written by Colunio who had never met Plaintiff and Boesen who believed Plaintiff "had the woman thing down" and lacked the "emotional intelligence" to perform her job. The majority of the negative marks in Plaintiff's review were in core competencies. Core competencies are rated on subjective criteria. Plaintiff was also docked her

stock bonus and not given a raise. Similarly situated men who had not reached their 2015 goals, including Boesen, were not placed on a PIP, not docked their stock bonus, and were given raises.

35. On March 17, 2016, Plaintiff reached out to Colunio to request a conference call with her and Coffin to discuss, among other issues, her negative review and other forms of discrimination, harassment and retaliation to which she was being subjected. Colunio returned Plaintiff's call and left a voice message. Colunio did not realize she had not hung up the telephone and continued her conversation with Coffin about Plaintiff - laughing and making fun of her. This clearly indicated to Plaintiff that Defendant had not taken her previous complaints of discrimination, harassment and retaliation seriously and had no intention of taking her current complaints of discrimination, harassment and retaliation seriously.

36. On or about March 31, 2016, Boesen left the company and Adam Rondeau ("Rondeau") was made Plaintiff's supervisor. Rondeau held the same position as Plaintiff, knew nothing about the work she had done in California, but was nevertheless made part of the decision making process regarding Plaintiff's PIP.

37. As part of the PIP, Plaintiff attended a weekly one-hour conference call with Boesen, Harris, and Colunio. After Boesen left the company, Rondeau was included in the calls.  These phone conferences were unproductive and involved intense and underserved criticism and intentional humiliation of Plaintiff from Boesen, Harris and Colunio. For instance, Plaintiff was criticized by Harris using the word "robust" in describing a program she was developing involving key stakeholders and doctors. Harris criticized Plaintiff for using the phrase "my team" telling Plaintiff it sounded "so egotistical."  In addressing the legislation Plaintiff was able to get sponsored, despite Harris and Boesen's interference, Harris told Plaintiff "see, that shows you do not know your job as you have a Republican sponsoring a bill in a democratic state."

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

38. During one conference call, Plaintiff stated she had already met her goals for 2016 – goals which had been approved by Harris and Boesen.  Boesen denied Plaintiff had met those goals and then tried to change the previously approved goals.  Harris would later acknowledge that Plaintiff had met her 2016 approved goals and that Boesen was mistaken.

39. On April 27, 2016, Plaintiff met with Harris and Colunio in Chicago where they told Plaintiff she was improving, but it was obvious she was not going to reach the goals of the PIP and that she would be terminated in 30-days. Plaintiff asked what specifically she needed to accomplish to improve further and meet the goals. Harris and Colunio was annoyed with Plaintiff and her questions and instead of engaging in a conversation to help her understand what exactly was being sought, and to assist her reach the objectives of the PIP, told Plaintiff to make a list of what she thought needed to be improved and they would review the list.

40. In May 2016, Plaintiff took approved medical leave and returned to work on or about August 2, 2016. It was not until August 5, 2016, that Defendant finally informed Plaintiff of what specifically Defendants found to be deficient in her work performance.

41. Because of her leave of absence, Plaintiff's end date for the PIP was August 31, 2016, when she would be required to present a final deliverable consisting of a presentation on 2017 legislative strategy recommendations for California. In attendance were, Harris, Rondeau, Pete Norman, Harris' supervisor, and Shannon Smith from Human Resource. Criticism of Plaintiff included having to address several follow up questions to a member of the group who was unfamiliar with terminology and explain concepts to those with no familiarity of California programs and/or the California legislative process, including Harris. Harris also criticized Plaintiff's presentation because she had not used bullet points.  These and other unjust criticisms

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

were despite the accolades from Pete Norman about Plaintiff's knowledge, performance and the deliverable itself.

42. Plaintiff was terminated by Harris ("Harris") on or about September 12, 2016 and would be offered a severance package, but only is she agreed to file a request to withdraw and not pursue her EEOC Charge of discrimination and retaliation filed in July 2016.

**FIRST CAUSE OF ACTION:**
**DISCRIMINATION BASED ON SEX/GENDER**
**IN VIOLATION OF FEDERAL AND STATE LAW**
**(DISPARATE TREATMENT)**

Plaintiff repeats and realleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

43. Plaintiff is female. As such Plaintiff is a member of a protected class.

44. Defendant, as an employer, is subject to the federal statute prohibiting discrimination, Title VII, 42 U.S.C. § 2000e et seq. as amended, and the Nevada state statute prohibiting racial discrimination, N.R.S. 613.310 et seq., and thus has a legal obligation to provide Plaintiff, and all employees, a workplace free of unlawful discrimination. Defendant failed to do so.

45. Defendant's discriminatory treatment of Plaintiff in her employment was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended, and the Nevada state statute prohibiting racial discrimination, N.R.S. 613.310 et seq.

46. Plaintiff was qualified for her job as Associate Director of Government Affairs in Defendant's Government Affairs and Policy Department having been promoted to that position in August of 2011.

47. As detailed more fully herein, Plaintiff was subjected to adverse employment actions including, but not limited to, a) excluding her from meetings, conventions and functions she would normally attend and which were necessary to the performance of her job; b) undercutting

11

her attempts and applications for transfers, promotions, raises and bonuses instead favoring and advocating for male employees who had not reached their goals to receive promotions, raises and bonuses; c) unfairly scrutinizing her performance; d) placing her on a Performance Improvement Plan; and, e) terminating her employment.

48. As detailed more fully herein including ¶¶ 15, 19, 24, and 36, similarly situated men were treatment more favorable.

49. Plaintiff's sex/gender was the sole or motivating factor for Defendant's actions.

50. Defendant had actual and constructive knowledge of the intolerable conditions and discrimination to which Plaintiff was subjected, but chose not to remedy the situation.

51. Defendant's actions, as more fully detailed above, are the direct and proximate cause Plaintiff's injury and damage.

52. Plaintiff has suffered economic loss as a direct and proximate result of Defendant's illegal racial discrimination and is entitled to recover an amount sufficient to make her whole.

53. Plaintiff has suffered and will suffer lost wages as a direct and proximate result of Defendant's actions.

54. The actions of Defendant were willful, malicious, fraudulent, and oppressive. Defendant should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

55. Plaintiff has suffered emotional distress, humiliation, and mental anguish as a direct and proximate result of Defendant's actions and is entitled to be compensated for those inflictions under the aforementioned federal statute.

56. As a result of Defendant's actions, Plaintiff has been required to hire an attorney and expend fees and costs to pursue and protect her legal rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

**SECOND CAUSE OF ACTION:**
**DISCRIMINATION BASED ON SEX/GENDER**
**IN VIOLATION OF FEDERAL AND STATE LAW**
**(HOSTILE WORKPLACE)**

Plaintiff repeats and realleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

57. Plaintiff is female. As such Plaintiff is a member of a protected class.

58. Defendant, as an employer, is subject to the federal statute prohibiting discrimination, Title VII, 42 U.S.C. § 2000e et seq. as amended, and the Nevada state statute prohibiting racial discrimination, N.R.S. 613.310 et seq., and thus has a legal obligation to provide Plaintiff, and all employees, a workplace free of unlawful discrimination. Defendant failed to do so.

59. Defendant's discriminatory treatment of Plaintiff in her employment was in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. as amended, and the Nevada state statute prohibiting racial discrimination, N.R.S. 613.310 et seq.

60. Plaintiff was subjected to verbal gender discrimination by Boesen and Harris, including but not limited to, Boesen and Harris stating to Plaintiff that she did not have the "emotional intelligence" for her job and that she had "the woman thing down." Defendant's verbal discrimination was severe or persuasive and altered the conditions of her employment.

61. Defendant's discrimination was unwelcome and created an abusive workplace.

62. Plaintiff's sex/gender was the sole or motivating factor for Defendant's actions.

63. Defendant had actual and constructive knowledge of the intolerable conditions and discrimination to which Plaintiff was subjected, but chose not to remedy the situation.

64. Defendant's actions, as more fully detailed above, are the direct and proximate cause Plaintiff's injury and damage.

65. Plaintiff has suffered economic loss as a direct and proximate result of Defendant's illegal racial discrimination and is entitled to recover an amount sufficient to make her whole.

66. Plaintiff has suffered and will suffer lost wages as a direct and proximate result of Defendant's actions.

67. The actions of Defendant were willful, malicious, fraudulent, and oppressive. Defendant should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

68. Plaintiff has suffered emotional distress, humiliation, and mental anguish as a direct and proximate result of Defendant's actions and is entitled to be compensated for those inflictions under the aforementioned federal statute.

69. As a result of Defendant's actions, Plaintiff has been required to hire an attorney and expend fees and costs to pursue and protect her legal rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

**THIRD CAUSE OF ACTION:**
**RETALIATION IN VIOLATION OF STATE AND FEDERAL LAW**
**BASED ON SEX/GENDER**
**(PARTICIPATION CLAUSE)**

Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

70. The aforementioned state and federal statutes prohibiting discrimination also separately prohibits employers from retaliating against any individual engaging in protected activity which includes reporting, complaining about, or raising concerns about possible discrimination or acts which might constitute discrimination.

71. As more fully detailed herein, Plaintiff engage in protective activity, including but not limited to reporting to her supervisor, Harris, the discrimination Belaski had subjected her to; reporting to Coffin, the discrimination Belaksi had subjected her to; reporting to Coffin the

14

discrimination Harris had subjected her to; reporting to Coffin the discrimination Boesen had

subjected her to; reporting the unjust performance evaluation and PIP; and filing a Charge of

discrimination and retaliation with the EEOC two months before her termination.

72. As detailed more fully herein, Plaintiff was subjected to adverse employment actions

including, but not limited to, a) excluding her from meetings, conventions and functions she

would normally attend and which were necessary to the performance of her job; b) undercutting

her attempts and applications for transfers, promotions, raises and bonuses instead favoring and

advocating for male employees who had not reached their goals to receive promotions, raises and

bonuses; c) unfairly scrutinizing her performance; d) placing her on a Performance Improvement

Plan; and, e) terminating her employment.

73. There exists a causal link between the protected activities in which Plaintiff engaged and

the adverse employment actions as more fully detailed herein.

74. Defendant failed to take reasonable actions to prevent retaliation against Plaintiff. To

Plaintiff's knowledge and perception, after she complained and otherwise engaged in protected

activities, no preventive or remedial actions were taken to prevent retaliation. On the contrary,

Defendant, by and through their agents, managers, and/or employees, actively engaged in

retaliation against Plaintiff in violation of state and federal anti-retaliation provisions.

75. Plaintiff suffered one or more adverse job consequences intentionally imposed by

Defendants after she complained of discrimination based on race and, additionally, for her

having opposed Defendant's discriminatory and illegal employment practices in its work place,

including, but not limited to, termination. These consequences are of the type that would tend to

discourage similarly situated employees from complaining about or opposing illegal

discrimination.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ◆ Fax (702) 258-6983

76. As a direct and proximate cause of Defendant's wrongful conduct and illegal discrimination in the form of retaliation, Plaintiff has been seriously harmed, economically and emotionally, and is, therefore, entitled to be fully compensated.

77. As a result of Defendant's actions, Plaintiff has been required to hire an attorney and expend fees and costs to pursue and protect her legal rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

**FOURTH CAUSE OF ACTION:**
**RETALIATION IN VIOLATION OF STATE AND FEDERAL LAW**
**BASED ON SEX/GENDER**
**(OPPOSITION CLAUSE)**

Plaintiff repeats and re-alleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

78. The aforementioned state and federal statutes prohibiting discrimination also separately prohibits employers from retaliating against any individual engaging in protected activity which includes reporting, complaining about, or raising concerns about possible discrimination or acts which might constitute discrimination.

79. As more fully detailed herein, Plaintiff engage in protective activity, including but not limited to reporting to her supervisor, Harris, the discrimination Belaski had subjected her to; reporting to Coffin the discrimination Belaksi had subjected her to; reporting to Coffin the discrimination Harris had subjected her to; reporting to Coffin the discrimination Boesen had subjected her to; reporting the unjust performance evaluation and PIP; and filing a Charge of discrimination and retaliation with the EEOC two months before her termination.

80. As detailed more fully herein, Plaintiff was subjected to adverse employment actions including, but not limited to, a) excluding her from meetings, conventions and functions she would normally attend and which were necessary to the performance of her job; b) undercutting

her attempts and applications for transfers, promotions, raises and bonuses instead favoring and advocating for male employees who had not reached their goals to receive promotions, raises and bonuses; c) unfairly scrutinizing her performance; d) placing her on a Performance Improvement Plan; and, e) terminating her employment.

81. There exists a causal link between the protected activities in which Plaintiff engaged and the adverse employment actions as more fully detailed herein.

82. Defendant failed to take reasonable actions to prevent retaliation against Plaintiff. To Plaintiff's knowledge and perception, after she complained and otherwise engaged in protected activities, no preventive or remedial actions were taken to prevent retaliation. On the contrary, Defendant, by and through their agents, managers, and/or employees, actively engaged in retaliation against Plaintiff in violation of state and federal anti-retaliation provision.

83. Plaintiff suffered one or more adverse job consequences intentionally imposed by Defendants after she complained of discrimination based on race and, additionally, for her having opposed Defendants' discriminatory and illegal employment practices in its work place, including, but not limited to, termination. These consequences are of the type that would tend to discourage similarly situated employees from complaining about or opposing illegal discrimination.

84. As a direct and proximate cause of Defendant's wrongful conduct and illegal discrimination in the form of retaliation, Plaintiff has been seriously harmed, economically and emotionally, and is, therefore, entitled to be fully compensated.

85. As a result of Defendant's actions, Plaintiff has been required to hire an attorney and expend fees and costs to pursue and protect her legal rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

17

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. AZURE DR., SUITE 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

WHEREFORE, Plaintiff expressly reserves the right to amend her Complaint at or before the time of trial of the action herein to include all items of damages not yet ascertained, and demands judgment against Defendant as follows:

A.  All applicable monetary relief provided for under Federal law, common law and Nevada state law including, but not limited, to the following:

   1.  Money damages in excess of $75,000.00;

   2.  Economic damages including, but not limited to, lost wages and benefits of employment, incidental and consequential damages;

   3.  General damages including emotional distress and general economic harm;

   4.  Punitive and/or Exemplary damages to deter the Defendant from future willful, malicious, fraudulent, and oppressive conduct of a similar nature;

   5.  Pre-judgment and post-judgment interest on the amounts awarded  at the prevailing legal rate;

   6.  For an additional amount to account for any taxes Plaintiff may be called upon to pay in relation to any award made herein;

   7.  Reasonable attorney fees, reasonable expert witness fees, and other costs of the action pursuant to federal and state statute, agreement, or court rule;

B.  A trial by jury on all issues that may be tried to a jury; and/or

C.  For such other and further relief as the Court may deem just and proper.

   DATED this 5th day of August, 2017.

                                          /s/      James P. Kemp
                                   *Attorney for Plaintiff Pauline Whelan*

18

# EXHIBIT 1

# EXHIBIT 1

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:    **Pauline Whelan**
    **1147 Casa Palermo Circle**
    **Henderson, NV 89011**

From:    **Boston Area Office**
    **John F. Kennedy Fed Bldg**
    **Government Ctr, Room 475**
    **Boston, MA 02203**

|  |  |
|---|---|
| [ ] | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **487-2016-01210** | **Susan M. Boscia,** <br> **Investigator** | **(617) 565-3213** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]    Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Feng K. An,**
**Area Office Director**

MAY 09 2017
*(Date Mailed)*

Enclosures(s)

cc:    **Crystal Herrera, Esq.**
    **Littler Mendelson PC**
    **3960 Howard Hughes Parkway, Suite 300**
    **Las Vegas, NV 89169-5937**

    **Victoria Neal Esq.**
    **Kemp & Kemp, Attorneys at Law**
    **7435 Azure Drive, Suite 110**
    **Las Vegas, NV 89130**

P10003